UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MICHAEL CAMPBELL
Individually and as  Administrators of the Estate of
JAMES CAMPBELL, Deceased,                                    **DOCKET NO.:**

                               Plaintiffs,

          - against -

COUNTY OF NASSAU, NARDA HALL, NASSAU UNIVERSITY
MEDICAL CENTER, NARDA HALL, NASSAU HEALTH
CARE CORP., and  THE NASSAU COUNTY                          **COMPLAINT**
DEPARTMENT OF CORRECTIONS a.k.a.
THE NASSAU COUNTY SHERIFFS DEPARTMENT
"JOHN and JANE DOES 1-10"

                       Defendants.            **JURY TRIAL DEMANDED**
-------------------------------------------------------------------X

      Plaintiffs, MICHAEL CAMPBELL Individually and as  Administrators of the Estate of

JAMES CAMPBELL, Deceased, by and through their attorneys, The Law Offices of Frederick K.

Brewington, as and for their Federal Complaint, against the Defendants, respectfully sets forth:

### PRELIMINARY STATEMENT

      1.      This is a civil action seeking punitive and monetary relief for the deprivation of

rights, denial of care, disregard for basic human needs and medical care, denial of due process,

willful and intentional withholding of necessary and life sustaining treatment and medication,

causing pain and suffering and tragic death of decedent, JAMES CAMPBELL, while he was in the

custody of the COUNTY OF NASSAU, NARDA HALL, NASSAU UNIVERSITY MEDICAL

CENTER, NASSAU HEALTH CARE CORP., and THE NASSAU COUNTY DEPARTMENT OF

CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFF'S DEPARTMENT and "JOHN and

JANE DOES 1-10".

2.     Mr. JAMES CAMPBELL was caused to die and endured pain, suffering, discomfort and summary punishment as a direct result of Defendants' cruel, unusual, inhumane and unjustified treatment without reasonable justification.

3.     Defendants individually, and in concert with one another, deprived and interfered with Mr. CAMPBELL's civil rights and privileges, denied his access to equal terms and conditions available to detainees, caused his wrongful death, medical malpractice and negligence all in violation of 42 U.S.C. §1983, the United States Constitution, and the laws of New York State.  From October 29, 2021 through and including November 10, 2021 (including his in custody hospitalization leading to his death), Defendants' failure to meet their obligation to safeguard detainees subject to their exclusive care and custody led to the Wrongful Death, Medical Malpractice, Negligence, Violations of Civil Rights and Personal Injuries to plaintiff's decedent including the infliction of physical and emotional harm and death all caused by the negligent, callous, reckless and careless actions and inactions of COUNTY OF NASSAU, NARDA HALL, NASSAU UNIVERSITY MEDICAL CENTER, NASSAU HEALTH CARE CORP., and THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFF'S DEPARTMENT and "JOHN and JANE DOES 1-10". DEFENDANTS failed to provide the necessary equipment and training for prevention and responses to medical emergencies, failed to prevent and adequately treat Mr. CAMPBELL's medical needs, medical conditions and failed meet and perform basic medical protocols, treatments, procedures which were in keeping with good and accepted medical treatment, good and accepted jail standards, good and accepted policing/custodial standards and failed to follow their own rules and regulations.

4.      Defendants, willfully, intentionally, wantonly, recklessly, carelessly, knowingly, and purposefully, acting individually, and in conspiracy with each other, sought to dehumanize Mr. CAMPBELL, failing to meet their obligation to safeguard detainees under their control and follow rules and regulations- all in violation of Mr. CAMPBELL's constitutional and civil rights.

5.      Defendants' unlawful, violative, inappropriate, abusive, unauthorized, and/or negligent actions constitute civil rights and constitutional violations. Included in these rights is protection from summary punishment and torture.

6.      Upon information and belief, Defendants, without legal basis or authority, justification or any reason, except an intent to deprive Plaintiff of his rights, engaged in a series of actions and course of conduct as State Actors which was violative of Plaintiffs Constitutional and Statutory Rights.  Each of these acts were not welcome and were clearly established to be violations under law and practice.  The actions and inactions were of the COUNTY OF NASSAU, NARDA HALL, NASSAU UNIVERSITY MEDICAL CENTER, NASSAU HEALTH CARE CORP., and THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFF'S DEPARTMENT and "JOHN and JANE DOES 1-10".

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. §1983, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343 (3) and (4) and the aforementioned statutory and constitutional provisions. Plaintiff further invokes pendent jurisdiction of this  Court pursuant to 28 U.S.C. §1367 to hear and decide any and all claims arising under State law.

3

8.      The Administrator of this Estate was duly appointed by the Surrogate's Court of Nassau County on January 11, 2023 and did not have authority to proceed with this action until that time.  However, Plaintiff recognizes and respects his obligation to comply with the requirements of the General Municipal Law and therefore on January 7, 2022 filed a Notice of Claim on each of the necessary Defendants.

9.      As referenced above, prior hereto, on January 7, 2022, Plaintiff filed a Notice of Claim in compliance with General Municipal Law § 50 et. seq. and CPLR § 215 as against each municipal Defendant.  A hearing pursuant to General Municipal Law §50h was conducted September 22, 2022 wherein Plaintiff MICHAEL CAMPBELL was examined.

10.     Venue for this action is the Eastern District of New York based on where the actions complained of herein occurred.

## PARTIES

11.     During all times mentioned in this Complaint, Plaintiff  MICHAELCAMPBELL, (hereinafter "PLAINTIFF") is the brother of JAMES CAMPBELL and the appointed Administrators of his brother's Estate by Nassau County Surrogate's Court on January 11, 2023.

12.     During all times mentioned in this Complaint, Decedent, JAMES CAMPBELL, hereinafter "DECEDENT" or "MR. CAMPBELL") was a United States citizen, born on August 4, 1964, who was being housed at Nassau County Correctional Center (N.C.C.C.) when he was caused to die due to the violations visited upon him; the actions, inactions and failures of the Defendants named herein during his captivity and imprisonment at the hands of these Defendants.

13.     During all times mentioned in this Complaint, Defendant COUNTY OF NASSAU (hereinafter "COUNTY") is a duly constituted municipal corporation of the State of New York, and

4

is/was the employer of the sheriff's department, correctional facility, and correctional officers. Defendant NARDA HALL is an employee of COUNTY and has been designated by contract as the contact person responsible for NASSAU for the contract between COUNTY and NCHCC.

14.     During all times mentioned in this Complaint, Defendant NASSAU COUNTY SHERIFF'S DEPARTMENT a.k.a. NASSAU COUNTY DEPARTMENT OF CORRECTIONS (hereinafter "SHERIFF'S DEPARTMENT") is an agency and/or entity of the COUNTY.

15.     During all times mentioned in this Complaint, COUNTY formed and has direct authority over several different correctional facilities and departments including, N.C.C.C. and the aforementioned departments and/or the employees, agents or representatives of said departments are directly involved in violations that are at issue in this Complaint.

16.     Defendant, NASSAU UNIVERSITY MEDICAL CENTER, (hereinafter "NUMC") was and is a public health facility and at all relevant times was owned and operated by NASSAU COUNTY HEALTH CARE CORPORATIONS and was previously owned and operated by the County of Nassau and served as an agency/department of NASSAU COUNTY.

17.     NASSAU COUNTY HEALTH CARE CORPORATION, (hereinafter NCHCC) is a public health corporation and is the owner of NUMC and is responsible for the actions of each of its officers, agents, employees, servants and designees. When NUMC and/or NCHCC is/re referenced, it is intended to include both NUMC and NCHCC, when proper.

18.     Defendant NUMC has a duty to provide competent medical and custodial care to their patients.

19.     Defendant NUMC has a duty to provide competent medical and non-medical personnel for the care and safety of their patients.

5

20.     Defendant NUMC, its agents and/or employees, have a duty to use reasonable care when administering medical care/treatment to a patient.

21.     As to state law claims and causes of action, Defendant NUMC is vicariously liable for the acts of their agents and employees.

22.     During all times mentioned in this Complaint, Defendants, each of them, separately and in concert, engaged in acts and omissions which constituted deprivation of the constitutional rights, privileges and immunities of the Decedent, and while these acts were carried out under color of law, the Defendants had no justification or excuse in law; the acts were instead gratuitous, illegal, improper and unrelated to any activity in which correctional officers may appropriately and legally engage in the course of protecting persons, detainees, prisoners, property, or ensure civil order.

23.     During all times mentioned in this Complaint, Defendants had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of the Decedent; each of the Defendants failed and refused to perform that duty and failed and refused to restrain the other Defendants, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon the Decedent.

24.     During all times mentioned in this Complaint, each of the Defendants were acting under color of law, to wit, under color of Constitution, statutes, ordinances, laws, rules, regulations, policies, customs, and usages of the State of New York and/or County of Nassau.

25.     During all times mentioned in this Complaint, each of the Defendants were acting separately and in concert, engaged in acts and omissions which constituted deprivation of the constitutional rights, privileges and immunities of the Plaintiff, and while these acts were carried out under color of law, the Defendants had no justification or excuse in law; the acts were instead

6

gratuitous, illegal, improper and unrelated to any activity in which correction officers   may appropriately and legally engage in the course of protecting persons, detainees, inmates, prisoners, property, or ensure civil order.

26.     During all times mentioned in this Complaint, Defendants had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of the Plaintiffs; each of the Defendants did not intervene and failed to and refused to perform that duty, and failed and refused to restrain the other Defendants, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon  the Plaintiff.

27.     During all times mentioned in this Complaint, COUNTY OF NASSAU, NARDA HALL, NASSAU UNIVERSITY MEDICAL CENTER, NASSAU HEALTH CARE CORP., and THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFF'S DEPARTMENT and "JOHN and JANE DOES 1-10" (hereinafter "Defendants") were acting under color of law, to wit, under color of the Constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or COUNTY.

28.     During all times mentioned in this Complaint, in addition to NARDA HALL, JOHN AND JANE DOES 1-10 (hereinafter "JOHN AND JANE DOES 1-10"), whose names are not known to Plaintiffs as of the date of filing this Complaint, are citizens of the COUNTY and State of New York, and employees of the Defendants, the COUNTY, SHERIFF'S DEPARTMENT, NUMC and "JOHN AND JANE DOES 1-10" are each being sued herein in their individual and official capacities.

**STATEMENT OF FACTS**

29.     JAMES CAMPBELL was a 57-year-old male who died on November 10, 2021 of gastrointestinal hemorrhage due to penetrating chronic peptic ulcer while in the custody of the COUNTY OF NASSAU, NARDA HALL, NASSAU UNIVERSITY MEDICAL CENTER, NASSAU HEALTH CARE CORP., and THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFF'S DEPARTMENT and "JOHN and JANE DOES 1-10" while he was unable to care for himself, unable to obtain medical treatment of his choosing and unable to render aid to himself due to his liberty having been managed, dictated and controlled by COUNTY OF NASSAU, NARDA HALL,  NASSAU UNIVERSITY MEDICAL CENTER, NASSAU HEALTH CARE CORP., and THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFF'S DEPARTMENT and "JOHN and JANE DOES 1-10".

30.     Mr. CAMPBELL surrendered himself to the NASSAU COUNTY Police Department on October 29, 2021 and was taken into custody away from his family, his home, his medications, and his health care providers.

31.     Mr. Campbell was in the custody of the the Nassau County Correctional Facility for the period October 29, 2021 through and including November 10, 2021 (including his in custody hospitalization leading to his death),  and was in the custody of Defendants  during that time.

32.     Plaintiff's decedent, while in the custody and control of the County of Nassau, Nassau Health Care Corp., Nassau University Medical Center, and Nassau County SHERIFF'S DEPARTMENT, the Nassau County Department of Corrections and "JOHN and JANE DOES 1-10" was denied adequate, proper and timely treatment, was subjected to cruel and inhuman conditions,

was forced to endure pain and forced to suffer, was forced to suffer summary punishment, was the victim of medical malpractice, was ignored as to real and immediate complaints as to his health was denied access to medical personnel.

33.     Plaintiff's decedent was subjected to improper treatment and diagnosis and made to suffer other injuries including death at the hands of the County of Nassau, Nassau Health Care Corp., Nassau University Medical Center, and Nassau County SHERIFF'S DEPARTMENT, the Nassau County Department of Corrections and "JOHN and JANE DOES 1-10".

34.     Upon entering NCCC, MR. CAMPBELL suffered from a list of ailments including:

- sleep apnea, for which he used a c-pap machine;
- hypertension, for which he was using prescribed medication;
- stomach pain;
- cocaine use;
- constant pain due to a neck surgery that was recent to his incarceration where two metal rods were inserted into his neck;
- constant pain due to back issues for which Decedent was to have back surgery shortly following his release from incarceration;
- constant shoulder pain following surgery for an injury he sustained while working;
- MR. CAMPBELL was taking prescription pain management medication to cope with the pain prior to his incarceration by DEFENDANTS.
- 

35.     While in jail MR. Campbell spoke by phone with his brother, Plaintiff MICHAEL CAMPBELL from Friday October 29, 2021 through Monday, November 8, 2021. During those conversations, Plaintiff Decedent would complain to his brother of stomach pain, neck pain, shoulder and back pain. Plaintiff Decedent also complained of chest pain and shortness of breath.

36.     Plaintiff decedent specifically complained on Wednesday November 1, 2021 of the intensifying pains in his stomach and stated that he thought the generic pain medication he was prescribed and administered by John Does #'s 1 and 2 may be making his stomach pain worse.

37.     On Sunday, November 7, 2021 Plaintiff Decedent informed his brother Plaintiff MICHAEL CAMPBELL, that the pain in his stomach was worsening and the doctors were not helping with the pain.

38.     On Monday, November 8, 2021, Plaintiff Decedent told his brother MICHAEL CAMPBELL that the pain in his stomach was worsening and he went to see the doctor. Unfortunately, John Doe #3 doctor only prescribed Decedent with "a couple of aspirin and sent him back to his cell."

39.      On Tuesday, November 9, 2021 Plaintiff MICHAEL CAMPBELL did not receive a call from his brother Plaintiff Decedent JAMES CAMPBELL. Plaintiff found this odd and disturbing as the two spoke every day.

40.     On Wednesday, November 10, 2021, Plaintiff received a phone call from a detective, John Doe #4 who informed Plaintiff that his brother passed away. The detective informed Plaintiff that his brother complained that day of pain in his stomach and chest and had of shortness of breath. Plaintiff was told that Decedent was then taken to NUMC, but it was determined that they were "too late" and Decedent "could not be revived." He was then told a nurse would call him later with more details.

41.     Plaintiff was in shock as to how is brother could have diesd so suddenly. The nurse, Jane Doe #1, called and informed Plaintiff that his brother was indeed deceased and he died from an ulcer.

42.     On Friday, November 12, 2021 Plaintiff met with the COUNTY medical Examiner, Jane Doe #2 who read the autopsy report to Plaintiff and had him identify his brother's body. Plaintiff had no other contact with DEFENDANTS, and received no other information regarding the

10

events that led to his brother's death, including any events that may have transpired on the one day when Plaintiff did not receive a phone call from his brother.

43.     At all times, Collective Defendants were agents of COUNTY and were acting under color of law and pursuant to their duties as employees of COUNTY - even at times when Defendants were knowingly acting outside the scope of their authorities.

44.     Mr. CAMPBELL was denied his rights to protection from the failure, omissions, intentional acts and incompetency to which he was subjected including inadequate medical care, as he was subjected to great physical, mental and emotional harm, was subjected to great fear and was made to endure great pain and suffering and made to die as a result of aforesaid unlawful conduct of Defendants, their agents, employees, and servants.

45.     The Nassau County Correctional Center (hereinafter "NCCC") is a correctional facility operated by the Nassau County Sheriff's Department, an agency of Nassau County and is located on 100 Carmen Avenue in East Meadow, New York.

46.     The campus of the NCCC, which is depicted in the photo below has two main buildings, both of which are immediately north of the Nassau University Medical Center.



47. Defendant, NASSAU UNIVERSITY MEDICAL CENTER, (hereinafter "NUMC") was and is a public health facility and at all relevant times was owned and operated by NASSAU COUNTY HEALTH CARE CORPORATIONS and was previously owned and operated by the County of Nassau and served as an agency/department of NASSAU COUNTY. The ariel image below provides a view from the South of NUMC, which places the NCCC just to the North.



48. NASSAU COUNTY HEALTH CARE CORPORATION, (hereinafter NCHCC or NHCC) is a public health corporation and is the owner of NUMC and is responsible for the actions of each of its officers, agents, employees, servants and designees. When NUMC and or NCHCC are referenced it is intended to include NCHCC when proper.

49. The New York State Commission of Correction (hereinafter "Commission") is a New York State Agency and is empowered to visit and inspect all penal institutions and to promote humane and efficient administration of these institutions.

50. The Medical Review Board (hereinafter "the Board" or "Board") is a unit with in the Commission and has the responsibility to conduct investigations and report to the Commission of

12

Correction pursuant to Correction Law, section 47(1) The board shall have the following functions, powers and duties:

(a) Investigate and review the cause and circumstances surrounding the death of any inmate   of a correctional facility.

(b) Visit and inspect any correctional facility wherein an inmate has died.

( c) Cause the body of the deceased to undergo such examinations, including an autopsy, as in the opinion of the board, are necessary to determine the cause of death, irrespective of whether any such examination or autopsy shall have previously been performed.

(d) Upon review of the cause of death and circumstances surrounding the death of any
   inmate, the board shall submit its report thereon to the commission and, where appropriate, make recommendations to prevent the recurrence of such deaths to the commission and the   administrator of the appropriate correctional facility.

(e)(I) Investigate and report to the commission on the condition of systems for the delivery of medical care to inmates of correctional facilities and where appropriate recommend such   changes as it shall deem necessary and proper to improve the quality and availability of such medical care.

51.     For more than a decade the County of Nassau has been aware of the ongoing problems and deficiencies with the level and type of medical and health care being provided to those persons being housed in the Nassau County Jail.

52.     Nassau County has, and continues to, engage in a pattern and practice of deliberate indifference as to the serious and ongoing medical needs of those person who are in their custody at the NCCC. Municipalities like Nassau County cannot shield themselves from liability by delegating inmate medical care to third-party, private entities.

53.     Between 1999 and 2000, the United States Department of Justice ("DOJ") investigated conditions at the NCCC.  On September 11, 2000, the DOJ found that the NCCC was deliberately indifferent to its inmates' medical and mental needs, and that corrections officers at the

NCCC had a practice of using excessive force. The DOJ sued Nassau County in this Court on April 22, 2002.

54.  The parties entered into a settlement agreement the same day, dismissing the case subject to the County's compliance with certain terms to improve conditions at the NCCC. The settlement agreement included specific policies and programs that the NCCC would develop and implement to improve inmate health care, including: (I) written medical policies, procedures, and protocols relating to initial health assessments, sick calls, emergency care, and medical records; (ii) new inmate health screenings that included the inmates' input about their medical history, current medication, allergy information, and immunization history; (iii) a written chronic care disease management program; and (iv) a written functional quality improvement program that included self-evaluations, recommendations for clinical guidelines, and internal peer reviews.

55.  To implement the quality improvement program, the NCCC was required to establish a Quality Improvement Committee ("QIC") chaired by a physician. The terms of the settlement required the QIC to have ten monthly meetings each year to "review the status of health care provided to inmates," and to report its work to the Sheriff each month.

56.  On May 5, 2008, the parties filed a stipulation to dismiss the case because of the NCCC's substantial compliance with the settlement agreement. The Honorable Leonard Wexler "so ordered" the stipulation of dismissal on March 20, 2008.

57.  Eamon McGinn died on January 3, 2010 from a suicidal hanging at Nassau County Correctional Center. "The medical review board deem[ed] this to have been a preventable death with inadequate provision of medical and mental health care."

58.     Darryl Woody died on January 3, 2011 from a suicidal hanging at Nassau County Correctional Center. The State wrote in their findings that: "Woody's death may have been prevented but for the grossly inadequate psychiatric care provided [for] him in the jail."

59.     Kevin Brown died on February 10, 2014 of cardiac failure while in custody at Nassau County Correctional Center. "The Medical Review Board finds that [the County's Contractor], in its contracted locations in New York State, has engaged in a pattern of inadequate and neglectful medical care questions their ability to meet and provide for the healthcare needs of jail inmates." "The Medical Review Board opine[d] that had Brown received proper medical care and supervision, his death may have been prevented."

60.     Mr. Marinaccio died on May 2, 2015 at NCCC "The Medical Review Board [found] that Marinaccio received inadequate health care from [the County's Contractor] the contracted medical provider of the Nassau County Correctional Center, due to having an unrecognized acute myocardial infarction with probable electrocardiogram changes that could have been detected had he received a proper medical examination, had Marinaccio's signs of his myocardial infarction been recognized and sent to a hospital to receive percutaneous cardiac intervention, his death may have been prevented"

61.     Mr. William Satchell died on March 24, 2016 at NCCC "The Medical Review Board [ ] found that incompetent healthcare provided to Stachell by the contracted medical provider [ ], which included repeated failure to recognize life threatening manifestations of a new onset medical condition and the allowing of Stachell's uncontrolled hyperglycemia to progress to diabetic ketoacidosis, kidney failure and metabolic compromise, was contributory to death." Mr. Satchell's image is provided below.

15



62.     The NYS Commissions recommended that Nassau County Legislature: "shall conduct an inquiry into the fitness of [the County's Contractor] as a correctional medical care provider in the Nassau County Correctional Center. Specific attention shall be directed to [the Contractor's] pattern of failing to properly manage patients chronic medical needs, failing to maintain proper and organized patient records, and failing to provide hospitalization for patients when clinically indicated."

63.     Upon information and belief, the County did not conduct an inquiry into the fitness of [the County's Contractor] as a correctional medical care provider.

64.     The County of Nassau was placed on notice that despite the investigations of multiple deaths at the Nassau County Correctional Center since 2011 with findings and recommendations from the Medical Review Board regarding systemic deficiencies in the delivery of adequate medical care there has been a continued failure and unwillingness by [Nassau's Contractor] to address the identified issues... Conclusively, the Medical Review Board opines that contracted medical provider, Armor Inc is incapable of providing competent medical care."

65.     The Medical Review Board found that there was a definite medication error that occurred with Satchell that went unrecognized by the medical staff. Additionally, the Medical

Review Board found that the medication error and subsequent failures to properly document and address the error is demonstrative of the consistent and systemically incompetent medical care provided by the Contractor hired by Nassau County.

66.     The Medical Review Board found that as to Mr. Satchell, medical staff from the Contractor for the County failed to conduct a competent physical exam during the admission process... one time dose of diflucan grossly inadequate ... metformin was an inappropriate measure...the Medical Review Board found that Satchell's hypertension was grossly mismanaged by medical staff from the Contractor hired by the County of Nassau, and that they failed to provide adequate supervision and clinical oversight of medical care in their infirmary. Additionally, the Medical Review Board finds that the County's Contractor engaged in an improper practice by utilizing licensed practical nurses, who lack the qualification and training for attending to the critical infirmary level care patients without the required level of nursing supervision.

67.     The Medical Review Board found that the Medical Director of the Contractor failed to recognize that Satchell was progressing into acute renal failure, failed to initiate appropriate intervention and transfer to a hospital. CM failed to initiate a referral.  The Commission advised the Nassau County Legislature to conduct an inquiry into the fitness of their Contractor with specific attention being directed to the Contractor' pattern of failing to properly manage patient's chronic and acute medical needs.

68.     The Medical Review Board found that in the death of Michael Cullum that his death was impacted by a failure of health care providers from the County's Contractor to adequately treat chronic illness, recognize and treat serious changes in Cullum's condition, provide adequate follow up on refusals of treatment and to provide prompt transfer to a higher level of care when indicated.

17

69.     As to the death of Michael Cullum, the Medical Review Board found that despite the investigations of multiple deaths at the Nassau County Correctional Center since 2011 with findings and recommendations from the Medical Review Board regarding systemic deficiencies in the delivery of adequate medical care, there has been continued failure and unwillingness by the County's Contractor to address identified issues.  Further, in evaluating the County's chosen Contractor, the Review Board stated, "Conclusively, the Medical Review Board opines that contracted medical provider, [   ], is incapable of providing competent medical care."  The photo below is a of Michael Cullum before he was detained and housed and died at NCCC.



70.     On July 5, 2016 Mr. Emanuel McElveen died while at the NCCC. The Medical Review Board stated that "The Nassau County Legislature shall conduct an inquiry into the fitness of [their chosen Contractor] as a correctional medical care provider in the Nassau County Correctional Center."  It also found that, "Conclusively, the Medical Review Board opines that contracted medical provider, [   ], is incapable of providing competent medical care."

18

71. Further as to Mr. Emanuel McElveen, "The Medical Review Board [found] that medical providers from [the County's Contractor] failed to properly diagnose and manage an otherwise manageable condition and is further evidence of their inability to provide competent medical care." The image of Mr. McElveen below shows him before he was detained, housed and died in the NCCC.



72. In 2016, the State of New York sued Armor, alleging that it had provided substandard medical care to inmates at the NCCC and the Niagara County Jail. *People v. Armor Correctional Health Medical Services*, Index No. 450835/2016. The parties eventually settled the case, and Armor agreed "not to bid on or enter into any contract with any municipality in New York State for the provision of jail health services" for a three-year period.

73. On October 17, 2016, the Nassau County Office of the Comptroller issued a review of the County's Contractor and the County's performance under the contract. The Comptroller also found that the NCCC "failed to provide adequate oversight to ensure that Armor was in compliance with its contract with the County." The Nassau County Comptroller also found that NCCC did not have a medical professional on staff to oversee Armor despite the contractual

agreement for a Health Care Administrator, who was to "oversee administration and monitor compliance with this agreement on behalf of the County[.]"

74.     On June 11, 2011 Roy Nordstrom died while he was housed in NCCC.  The New York State Commission on Corrections Medical Review Board concluded that Mr. Nordstrom died as a result of "grossly incompetent" medical care, and issued the directives to the County of Nassau to correct the ongoing failures occurring at the jail with regard to the provision of medical care to detainees and inmates.

75.     Bartholomew Ryan died on February 24, 2012 from suicidal hanging while in the custody of NCCC. The NYS Commission Report states that Mr. Ryan "received inadequate evaluation and treatment" by the health care provider selected and contracted by the County of Nassau. The photo below of Mr. Ryan in his United States Marine Uniform.



76.     After the deaths of Mr. Ryan and Mr. Nordstrom, the  County contract was to expire May 31, 2013 with the Contractor they had hired, yet on August 1, 2013, the County extended its contract with that same Contractor to run until May 31, 2015.

77.     John Gleeson was 40 years old when he died on July 14, 2014.  In the Matter of the Death of John Gleeson the New York State Commission on Corrections issued a report of Mr. Gleeson's death and the Board's investigation included interviews with medical and prison personnel, and a review of the relevant medical records. The Board was highly critical of the way that the Contractor hired by the County of Nassau and the medical staff who treated Mr. Gleeson. Below is a photo of Mr. Gleeson before he entered the NCCC and died.



78.     In regards to the death of Mr. Gleeson, the Board also directed the Nassau County Legislature to investigate whether the Contractor they had hired was fit to serve as a correctional medical care provider, with "[s]pecific attention ... to [the Contractor's] pattern of failing to properly manage patients' chronic medical needs, failing to maintain proper and organized patient records, and failing to provide hospitalization for patients when clinically indicated."

79.     The County of Nassau failed to do any form of investigation as directed.  Instead, in mid-2015, the County of Nassau entered into another two-year contract extension with that same Contractor, from June 1, 2015, to May 31, 2017.

80.     A 58-year-old Long Island woman, Elizabeth Stenson, with a history of mental illness died at the NCCC.  On the day Ms. Stenson entered custody, her attorney filed a court document alerting the jail that she required medical attention for high blood pressure. According to reports after

Ms. Stenson was jailed, from May 19 to May 23 2017 five days went by without her receiving her medication. Another demand for medical treatment was provided for medical attention. Three days later, she died of a heart attack. The image below is of Ms. Stenson before she was housed, detained and died in NCCC.



81.    It is reported that Nikita Pertsev on Nov. 23, 2022 Nikita Pertsev suffered a "medical episode" at the jail just before 1 p.m. and was taken to a nearby hospital where she was pronounced dead by a doctor.

82.    The County of Nassau, NCHCC, Nassau Sheriff's Department and all of its employees and agents knew or should have known that the level of care provided to persons housed in the Nassau County Jail was sub-standard, deliberately indifferent to the medical needs of the detainees and other persons in custody and failed to take necessary and appropriate steps to monitor, intervene and make sure that necessary medical care and services were being provided.

## AS AND FOR THE FIRST COUNT

### 42 U.S.C. § 1983 - Fourteenth Amendment Violations

83.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 82 of this Complaint with the same force and effect as though fully set forth

herein.

84.     COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE

NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION,

THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY

SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 failed to

provide the necessary equipment and training for prevention of the development of emergency and

fatal conditions and responses to medical emergencies, failed to prevent and adequately treat Mr.

CAMPBELL's medical conditions and failed to follow acceptable medical treatment and their own

rules and regulations. Said rights are guaranteed to the Decedent by 42 U.S.C. §1983, the United

States Constitution and New York State Law.

85.     Defendants COUNTY OF NASSAU and staff including but not limited to NARDA

HALL , THE  NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE

CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE

NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE

DOES 1-10 failed to provide due process of law and/or equal protection of Mr. CAMPBELL's

rights, when compared to those rights of other similarly situated detainees and failed to provide

protection and treatment that was clearly established and that any reasonable persons in Defendants

position would be well aware of Mr. CAMPBELL's needs and they each willfully, intentionally, and

with callous indifference to the result of their failures treated him as they did, even though they knew

or reasonably should have known of likely outcome of them ignoring his needs and failing to

providing him with proper, adequate and necessary care.

86.     Upon information and belief, defendants COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 all members of each of their employment engaged in the custody and care, including but not limited to the medical care of Mr. CAMPBELL, failed to respond to JAMES CAMPBELL's ongoing conditions, changing vital signs, medical needs, and eventual medical emergency within a timely manner, consistent with the good and accepted standards of care, rules, regulations, policies, standards, orders and mandates governing their behavior and responsibility, as well as protection as a person in the custody of the collective Defendants.

87.     Defendants COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 each and everyone one of them, had a duty to act reasonably and responsibly and not to act in a manner which would cause further harm to Mr. CAMPBELL.

88.     Individual Defendants NARDA HALL, JOHN AND JANE DOES 1-10,had a duty to act as would prudent persons in their positions, by taking actions that would safeguard detainees subject to their exclusive care and custody (including decedent herein) and acting within the scope of their authority.

89.     Individual Defendant NARDA HALL had a duty to properly supervise and evaluate the treatment of inmates, including but not limited to Mr. CAMPBELL and did so on a regular basis

24

where NARDA HALL was shown important medical services documentation including medical records and employee information. NARDA HALL failed to identify problems and failed to intervene when medical care was substandard, dangerous, and cruel.

90.     Defendants had a duty under 42 U.S.C. § 1983, New York State Law and their own rules and regulations, to provide adequate, proper and necessary care and treatment to the detainees, adequately prevent and respond to medical emergencies, adequately treat Mr. CAMPBELL's medical needs, not create and make worse medical conditions and respond to medical emergency, follow their own rules and regulations and prevent other wrongful acts that were committed against Mr. CAMPBELL. Collective Defendants had a duty to care for and protect Mr. CAMPBELL in every instance outlined above.

91.     The collective Defendants failed to adhere to and uphold their obligations in actively inflicting and failing to prevent the situations, conditions and emergency which amounted to abuses inflicted on Mr. CAMPBELL. All of the Defendants failed to meet their obligations to safeguard Mr. CAMPBELL under the United States Constitution and New York State Law willfully, intentionally, and with callous indifference to the result of their failures to protect the civil and constitutional rights of JAMES CAMPBELL.

92.     Said rights are guaranteed to Mr. CAMPBELL by 42 U.S.C. § 1983 and the Fourteenth Amendment of the Constitution. At all times, it was foreseeable to Defendants that their conduct would cause injuries to Mr. CAMPBELL, including, but not limited to, his death.

93.     That as a result of Defendants' failure to protect detainee, JAMES CAMPBELL was made to endure great pain and suffering, subject to violation of civil rights, great mental and emotional harm, summary punishment, fear, anxiety and terror. Mr. CAMPBELL sustained damages

and injuries including but not limited to special damages, unreasonable pain, discomfort, wrongful death and fear of impending death, all as a result of the aforesaid unlawful, violative, inappropriate, abusive, unauthorized, and/or negligent conduct of Defendants, their agents, employees, and servants.

94.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of TEN MILLION ($10,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR THE SECOND COUNT
## MUNICIPAL LIABILITY 42 U.S.C. § 1983

95.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 94 of this Complaint with the same force and effect as though fully set forth herein.

96.     In actively inflicting further harm and causing and allowing the emergence of conditions and failing to prevent the above stated failure, unprofessional behavior, mis-treatment, lack of treatment, denials and abuses incurred by JAMES CAMPBELL the actions of COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 were unlawful, violative, inappropriate, abusive, unauthorized, and/or negligent due to their failure to adhere to and uphold their obligation to secure and protect the civil and constitutional rights of Mr. CAMPBELL.

97.    Defendants COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 has permitted, tolerated and encouraged a pattern and practice of inadequate supervision, failure to monitor contractors, training and prevention of mal-practice and mistreatment by their respective employees, agents, servant, professionals, administrators, officers and others as to persons in their custody, including but not limited to JAMES CAMPBELL who as a detainee.

98.    Defendants COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 continual refusal to properly monitor contractors, train, supervise, instruct, discipline, and assure that the inappropriate, abusive, unauthorized, mal-practice and/or negligent actions of their respective employees, agents, servant, professionals, administrators, officers and others (including failure to follow rules and regulations, adhere to standards and obligation, and properly document incidents with accurate reports) was properly addressed constituted deliberate indifference to the rights, safety, and dignities secured by detainees (including the decedent herein).

99.    Defendants COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE

27

DOES 1-10 failed to provide the necessary equipment and training for prevention and responses to medical emergencies, failed to document, observe and report emergence of conditions and in failing to prevent the above stated failure, unprofessional behavior, mis-treatment, lack of treatment failed to prevent and adequately treat Mr. CAMPBELL's medical conditions and failed to follow their own rules and regulations. All those rights are guaranteed to the Decedent by 42 U.S.C. §1983, the United States Constitution and New York State Law.

100.    In actively inflicting the harm caused to Mr. CAMPBELL and allowing same to occur and failing to prevent the above stated failures and the abuses incurred by JAMES CAMPBELL, the Defendants' actions were unlawful, violative, inappropriate, abusive, unauthorized, and/or negligent due to their failure to adhere to and uphold their obligation to secure and protect the civil and constitutional rights of Mr. CAMPBELL.

101.    Defendants COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE  NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , have permitted, tolerated and encouraged a pattern and practice of inadequate supervision, training, mal-practice, substandard treatment and prevention of worsening of the medical conditions of its detainees.

102.    Individual Defendants of  THE NASSAU UNIVERSITY MEDICA CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to NARDA HALL, JOHN AND JANE DOES 1-10 who have repeatedly and unreasonably

28

sided with the abuse of persons so effected in nearly all cases, despite vast evidence of wrongdoing by their employees, servants, agents, contractors, officers, professionals and administrators and other officials against detainees, including the decedent herein.

103. The continual refusal to properly train, supervise, instruct, discipline, and assure that the inappropriate, abusive, unauthorized, improper, reckless, willful disregard to proper actions, and/or negligent actions of their employees, servants, agents, contractors, officers, professionals and administrators and other officials (including failure to follow rules and regulations, adhere to standards and obligation, and properly document incidents with accurate reports) and insure that same was properly addressed constituted deliberate indifference to the rights, safety, and dignities secured by detainees (including the decedent herein).

104. Upon information and belief, specific systemic flaws in the COUNTY correctional institution and all those performing duties their including, COUNTY OF NASSAU including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 and the flaws in their review process include, but are not limited to, the following:

> a. Preparing reports regarding investigations of breaches of duty of care as routine point-by-point justifications of their employees, servants, agents, contractors, officers, professionals and administrators and other officials' actions and/or failures, regardless of whether such actions and/or failures are justified;

> b. Their employees, servants, agents, contractors, officers, professionals and administrators and other officials investigating breaches of duty of care systematically fail to credit

testimony by non-institutional/municipal witnesses and uncritically rely on reports by their employees, servants, agents, contractors, officers, professionals and administrators and other officials involved in the incidents;

c.      Employees, servants, agents, contractors, officers, professionals and administrators and other officials Correctional officers investigating breaches of duty of care fail to include in their reports relevant factual information which would tend to contradict the statements of the correctional officers involved;

d.   Failing to followup on the reports and findings of State and Federal Agencies about the deficiencies and improper actions, conditions created and harms caused by their employees, servants, agents, contractors, officers, professionals and administrators and other officials;

e.      Supervisory and municipal personnel and officers issue public statements exonerating correctional officers for breaches of duty of care before the investigation of the incident has been completed;

f.      Reports in breaches of duty of care cases are not reviewed for accuracy by supervisory officers and personnel. Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

g.      Ongoing failures to provide necessary medical care and treatment about which the County and NHCC were well aware for over a decade.

h.      Repeated failures to monitor and require levels of reporting by NHCC on the practices and ongoing status of quality of treatment and responsiveness of medical personnel and corrections officers to the medical needs of persons being detained at NCCC

105.    Upon information an belief, the conducted, actions, practice and acts of COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY

SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 included an unacceptable pattern of practice regarding the use Licensed Practical Nurses for primary nursing care in an infirmary setting without the required nursing supervision.

106.    Upon information an belief, COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 were responsible for at least three incidents where medications were administered without evidence of a physician's order.

107.    Upon information an belief, all of the facts in the mis-treatment, failure in treatment and inappropriate treatment of Mr. CAMPBELL demonstrates that COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , as health care providers and staff, failed to provide appropriate, necessary and competent medical care to Mr. CAMPBELL which caused his death on November 10, 2021.

108.    Defendants COUNTY, NARDA HALL, THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 have a history of having ineffective intervention by medical staff, including notification to a physician and transfer

31

to emergency care in a hospital setting. In this case and in the past, Defendants nursing staff failed to recognize a patient in distress. This was known by Nassau County and NHCC/NUMC.

109.    Defendant Nassau County and NHCC/NUMC and its employees have a history of failing to consult with and refer to a physician in a medical emergency, and who failed to hospitalize a critically ill patient. This was known by Nassau County and NHCC/NUMC.

110.    Upon information and belief, Defendant COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , failed to properly supervise employees on duty at the time of Mr. CAMPBELL's medical needs, critical conditions requiring levels of treatment and his death, in violation of Federal and state law.

111.    The foregoing acts, omissions, systemic flaws, policies and customs of the Defendants COUNTY OF NASSAU and staff including but not limited to NARDA HALL, THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 caused their employees, servants, agents, contractors, officers, professionals and administrators and other officials to believe that failures to adhere to and uphold their obligation to care for, properly treat, listen to and protect detainees and other improper actions would not be aggressively, honestly and properly investigated, with the foreseeable result that their employees, servants, agents, contractors, officers, professionals and administrators and other officials are most likely to disregard their

32

obligations to detainees.

112.     As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies, practices and customs of the Defendants COUNTY OF NASSAU and staff including but not limited to NARDA HALL,  THE  NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 inadequately supervised their employees, servants, agents, contractors, officers, professionals and administrators and other officials and failed to prevent and adequately respond to the medical needs, complaints, conditions, vital signs, ongoing and existing medical situations, failed to provide the necessary equipment and training for prevention and responses to medical emergencies, failed to prevent and adequately treat CAMPBELL's medical conditions and failed to meet good and accept standards of care and treatment to those in their custody and under their control and failed to follow their own rules and regulations, all in violation of his civil and constitutional rights.

113.     Defendants did not employ appropriate procedures to physically care for and treat the aliments of JAMES CAMPBELL and failed to safeguard his health, physical well being, and life and Collective Defendants' unreasonable conduct against Mr. CAMPBELL was a direct result of the Defendants' failure to prevent and respond to the continuing and urgent need to train, oversee, supervise, restrain and discipline their employees, servants, agents, contractors, officers, professionals and administrators and other officials who failed to adhere to and uphold their obligation to care for, treat, maintain and protect detainees.

33

114.    Said cover-up by Defendants  was executed in this case, where the Defendants, their agents, employees and servants failed to sufficiently investigate the truthfulness and accuracy of the factors and facts surrounding and leading to the death of JAMES CAMPBELL and the information and statements of their employees, servants, agents, contractors, officers, professionals and administrators and other officials and instead acted under color of statute to knowingly, recklessly and/or negligently exonerate and clear their employees, servants, agents, contractors, officers, professionals and administrators and others of wrongdoing.

115.    By permitting and assisting such a pattern of misconduct, Defendants NARDA HALL,  THE  NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 acted under color of custom and policy to condone, encourage and promote the deprivation of Mr. CAMPBELL's rights; to wit allowing their employees, servants, agents, contractors, officers, professionals and administrators to be encouraged to believe that their failure to care for, treat, listen to, provide proper treatment to and protect Mr. CAMPBELL would be accepted with immunity, just as these actions have been so accepted to date.

116.    Defendants COUNTY OF NASSAU and staff including but not limited to NARDA HALL,  THE  NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 did not employ appropriate procedures to physically and/or medically safeguard JAMES CAMPBELL and Collective Defendants' unreasonable conduct against Mr. CAMPBELL was a

direct result of the Defendants' failure to prevent and respond to the continuing and urgent need to provide reasonable, proper, adequate and necessary care that was appropriate and necessary to prevent further harm and worsening of medical conditions and to prevent to delivery of substandard treatment by persons not trained and properly credentialed to provide the care, interact with detainees at the level they did and have otherwise tailed to restrain and discipline their employees, servants, agents, contractors, officers, professionals and administrators and others who failed to adhere to and uphold their obligation to care for and protect detainees.

117.    Said cover-up by Defendants was executed in this case, where the Defendants and their agents, employees and servants failed to sufficiently investigate the truthfulness and accuracy of the actions of their employees, servants, agents, contractors, officers, professionals and administrators and others and their actions, inactions, failures, mistreatment, and statements and instead acted under color of statute to knowingly, recklessly and/or negligently exonerate their employees, servants, agents, contractors, officers, professionals and administrators and others.

118.    By permitting and assisting such a pattern of misconduct, Defendants acted under color of custom and policy to condone, encourage and promote the deprivation of Mr. CAMPBELL's rights; to wit Defendants their employees, servants, agents, contractors, officers, professionals and administrators and others were encouraged by COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , RN VANWERT, RN KERRIGAN, LPN JONES, LPN KENNEDY, and Dr. MORCOS to believe that their failure to protect Mr. CAMPBELL would be

accepted with impunity, just as these actions have been so accepted to date.

119.    Upon information and belief, COUNTY OF NASSAU and staff including but not limited to NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 have been the previous subjects of court decrees relating to their systemic failures to address the needs of detainees and avoid violations of civil rights as have occurred in the instant case.

120.    As a consequence of Defendants' systemic practice, pattern, and custom of intentionally promoting and supporting violations of 42 U.S.C. §1983, the United States Constitution and New York State law, JAMES CAMPBELL was made to endure great pain and suffering, subject to violation of civil rights, great mental and emotional harm, summary punishment, fear, anxiety and terror.  Mr. CAMPBELL sustained damages and injuries including but not limited to special damages, unreasonable pain, discomfort, death and fear of impending death, all as a result of the aforesaid unlawful, violative, inappropriate, abusive, unauthorized, and/or negligent conduct of Defendants, their agents, employees, and servants.

121.    That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of TEN MILLION ($10,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR A THIRD COUNT
## NEGLIGENCE

122.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 121 of this Complaint with the same force and effect as though fully set forth herein.

123.    Defendants NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , their agents and/or employees, were negligent in the care rendered for and on behalf of Mr. CAMPBELL in, among other things, negligently failing and neglecting to use reasonable care in the services and care rendered for and on behalf of the sick and injured Mr. CAMPBELL; in negligently and carelessly neglecting to properly assess and diagnose Mr. CAMPBELL's condition; in negligently departing from accepted standards and practices in the services rendered for and on behalf Mr. CAMPBELL; in failing to follow good practice and procedure; in failing to perform indicated procedures in a proper manner; in performing indicated procedures on  Mr. CAMPBELL in a negligent manner; and in negligently evaluating the results of the tests and procedures that were performed on Mr. CAMPBELL.

124.    As a correctional medical care provider for Defendant THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 were under a duty to use reasonable care in hiring, and supervising its employees, including members of its medical staff,

as well as non-physician personnel, such as nurses, technicians, and aides. As a result, Defendants THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 was in violation of New York State Education Law, the Rules of the Board of Regents, and of New York State nursing practice regulations.

125.    Defendants COUNTY OF NASSAU, NARDA HALL, THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 were each under a duty to use reasonable care in the administering of emergency medical assistance to Mr. CAMPBELL, when they witnessed his injuries. Defendants possessed special skills, and there was a reasonable expectation that Defendants would use the same degree of skill and care that others in the medical community would reasonably use in the care for Mr. CAMPBELL.

126.    Defendants ARMOR and COUNTY OF NASSAU, NARDA HALL, THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 failed to have properly supervised employees on duty at the time of Plaintiff's death, in violation of state law.

127.    Defendants COUNTY OF NASSAU, NARDA HALL, THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY

SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 failed to properly assess the extent of Mr. CAMPBELL's medical needs, conditions, vital signs, complaints, failing report his conditions and failing to observe him for unreasonable time and to address changing medical circumstances, thus delaying the time in which proper, necessary, adequate and immediate medical attention was administered to the decedent.

128.     Defendants COUNTY OF NASSAU, NARDA HALL, THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 failed to promptly intervene and notify a physician although there were indications that Mr. CAMPBELL was in distress and a medical emergency was apparent.

129.     Based on the foregoing, Mr. CAMPBELL suffered severe, and was rendered to suffer extreme conscious physical painful injuries which cased his death.

130.     As a consequence of Defendants' systemic practice, pattern, and custom of failure to adequately, and provide the proper medical assistance to detainees at NCC, JAMES CAMPBELL was made to endure great pain and suffering.  Mr. CAMPBELL sustained damages and injuries including but not limited to special damages, unreasonable pain, discomfort and fear of impending death, all as a result of the aforesaid unlawful, violative, inappropriate, abusive, unauthorized, and/or negligent conduct of Defendants, their agents, employees, and servants.

131.     That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of TEN MILLION ($10,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

### AS AND FOR A FOURTH COUNT
### MEDICAL MALPRACTICE

132.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 131 of this Complaint with the same force and effect as though fully set forth herein.

133.   Defendants COUNTY OF NASSAU, NARDA HALL , THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , and each of them, breached their duty of care by failing to render proper medical treatment to Mr. CAMPBELL.

134.   Defendants, and each of them, breached their duty of care and committed medical malpractice by deviating from accepted standards of medical practice within the community.

135.   Defendants, and each of them, breached their duty of care by failing to provide adequate medical direction to their employees/agents to avoid placing and allowing Mr. CAMPBELL. to be placed into situations where his medical condition would not receive the proper attention and care that it required.

136.   Defendants, and each of them, breached their duty of care by, among other things, failing to properly assess Mr. CAMPBELL's condition, needs and medical status; ignoring his condition; improperly treated his needs and symptoms; failing to conduct proper diagnostic tests; failing to properly contact emergency care providers; failed to seek proper medical intervention; failed to follow proper medical protocols; conducted unlawful medical practices outside the scope

of their license and authority;  failed to immediately institute appropriate procedures; failed to take necessary interventions, and life saving procedures and, in other ways not known yet, failing to render proper medical care to Mr. CAMPBELL.

137.    Defendants COUNTY OF NASSAU, NARDA HALL, THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , failed to provide to their agents and employees adequate instructions, regulations and/or procedures for the care and safety of  Mr. CAMPBELL.

138.    Defendants COUNTY OF NASSAU, NARDA HALL, THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , and each of them, ignored the condition of Mr. CAMPBELL, and failed to heed the obvious and apparent medical emergency Mr. CAMPBELL was experiencing with regard to the life threatening abuse, beating, and strangulation to which he was subjected.

139.    Defendants COUNTY OF NASSAU, NARDA HALL, THE NASSAU UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , and each of them, failed to properly and adequately access the medical condition of Mr. CAMPBELL in accord with the reasonable treatment of others similarly situated.

41

140.    Defendants COUNTY OF NASSAU, NARDA HALL,   THE    NASSAU
UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE
NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY
SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , and each
of them, failed to exercise ordinary and reasonable care for Mr. CAMPBELL's safety and to ensure
that no further unnecessary harm befell Mr. CAMPBELL.

141.    Defendants COUNTY OF NASSAU, NARDA HALL,   THE    NASSAU
UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE
NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY
SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10 , and each
of them, failed to follow the appropriate instruction, regulations and/or procedures for the care and
safety of Mr. CAMPBELL.

142.    Defendants COUNTY OF NASSAU, NARDA HALL,   THE    NASSAU
UNIVERSITY MEDICAL CENTER, THE NASSAU HEALTH CARE CORPORATION, THE
NASSAU COUNTY DEPARTMENT OF CORRECTIONS a.k.a. THE NASSAU COUNTY
SHERIFFS DEPARTMENT, including but not limited to JOHN AND JANE DOES 1-10, and each
of them, failed to provide the standard of care to which a medical service provider is required to
adhere.

143.    As a direct and proximate result of defendants medical malpractice and negligence,
Mr. CAMPBELL suffered.

144.    As the direct and proximate result of the medical malpractice and negligence of
defendants, Mr. CAMPBELL suffered severe mental anguish, and suffered extreme conscious

physical painful injuries which ultimately caused his death.

145.     Upon information and belief, defendants' medical malpractice and negligence contributed to Mr. CAMPBELL's death.

146.     That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of TEN MILLION ($10,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR A FIFTH COUNT
## WRONGFUL DEATH

147.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 146 as though fully set forth herein.

148.     By reason of the foregoing, the negligence, willful acts, failures to act, malfeasance, malpractice, failure to properly, adequately, timely and professional treat and due to the culpable conduct of said defendants, the decedent sustained serious, severe, and permanent injuries his head, limbs, and body and was placed in great fear of death.

149.     By reason of the foregoing, JAMES CAMPBELL was caused to die.

150.     By reason of JAMES CAMPBELL's death, Plaintiff has been deprived of financial and emotional support, companionship, love, affection, nurturing and other things as children of decedent.

151.     The decedent left surviving next-of-kin and distributees.

152.     As a consequence of the foregoing, the decedent's estate became liable for funeral expenses and other liabilities and costs.

153.    The aforesaid acts of the Defendants and injuries resulting therefrom were caused solely and wholly as a result of the culpable conduct, failure, intentional acts, recklessness and the careless and negligent manner in which the defendants conducted themselves throughout their dealings with JAMES CAMPBELL, and were at all times in control of Mr. CAMPBELL and the only persons able to and authorized to assist, care for and prevent his death; in being liable under the doctrine of res ipsa loquitur; and in otherwise causing the damages sustained by Mr. CAMPBELL including his death, without Mr. CAMPBELL in any way contributing thereto.

154.    That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages in excess of TEN MILLION ($10,000,000.00) DOLLARS as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## PUNITIVE DAMAGES ARE PROPER
## AGAINST THE INDIVIDUAL DEFENDANTS

155.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 154 of this Complaint with the same force and effect as though fully set forth herein.

156.    The acts of the individual Defendants were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm JAMES CAMPBELL, without regard for his well being, and were based on a lack of concern and ill-will towards Mr. CAMPBELL. Such acts therefore deserve an award in excess of TEN MILLION Dollars ($10,000,000.00) as punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants:

a.      On the First Count in the sum in excess of TEN MILLION ($10,000,000.00)

44

DOLLARS;

b.      On the Second Count in the sum in excess of TEN MILLION ($10,000,000.00) DOLLARS;

c.      On the Third Count, in the sum in excess of TEN MILLION ($10,000,000.00) DOLLARS;

d.      On the Fourth Count, in the sum in excess of TEN MILLION ($10,000,000.00) DOLLARS;

e.      On the Fourth Count, in the sum in excess of TEN MILLION ($10,000,000.00) DOLLARS;

f.      Punitive damages in the amount in excess of TEN MILLION ($10,000,000.00) DOLLARS;

g.      Award costs of this action including attorney's fees to Plaintiff pursuant to 42 USC § 1988 and any and all applicable attorneys fees and costs as imposed by state law;

h.      Declaratory judgment that Defendants willfully violated Plaintiff's rights secured by federal and state law as alleged herein;

i.      Injunctive relief, requiring Defendants to correct all past violations of federal and state law as alleged herein; to enjoin Defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

j.      Award such other and further relief as this Court may deem appropriate.

<u>**A JURY TRIAL IS HEREBY DEMANDED**</u>

Dated: Hempstead, New York
      February 8, 2023

                        Respectfully Submitted,

                        LAW OFFICES OF
                        FREDERICK K. BREWINGTON
      By:
                        FREDERICK K. BREWINGTON
                        Attorneys for Plaintiff
                        556 Peninsula Boulevard
                        Hempstead, New York 11550
                        (516) 489-6959